STATE, Plaintiff, v. BYLSMA, Defendant.

*No. State 50.   Argued September 4, 1969.—Decided September 30, 1969.*
(Also reported in 170 N. W. 2d 707.)

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners.

For the defendant there was oral argument by *Jack McManus* of Madison.

PER CURIAM. The sole question before us is what discipline is to be imposed in this disciplinary proceeding. No challenge is raised by the defendant to the finding of the referee that the defendant was guilty of unprofessional conduct. In fact, no challenge is made by the defendant to the recommendation of the referee as to the

appropriate or indicated discipline. It is the complainant Board of State Bar Commissioners that moves for a ". . . judgment of discipline more severe than that recommended by the referee." On the issue of appropriate discipline, the findings of fact as to misconduct made by the referee are highly material. In fact, they are determinative.

The record establishes that the attorney involved, Clarence G. Bylsma, is forty years old, a resident of Madison, a practicing attorney since his admission to the bar in June, 1954. In his undergraduate years at the University of Wisconsin, he excelled academically and was elected to several honor societies, including Phi Beta Kappa. He graduated from the University of Wisconsin Law School with honors, and was elected to membership in the Order of Coif. Since his admission to the bar, he has practiced law in Madison, specializing in corporate and security practice. The defendant was general counsel for Allied Development Corporation and secretary and general counsel for Madison American Guaranty Insurance Company, commonly referred to as MAGIC. Each company paid him an annual retainer of $6,000. The conduct complained of involves defendant's conduct as an officer and general counsel of MAGIC. (A thorough discussion of the financial manipulations involved in MAGIC operations is set forth in *State v. Kelly* (1968), 39 Wis. 2d 171, 158 N. W. 2d 554.)

The referee found that the defendant, as secretary and a director of MAGIC, did file or cause to be filed with the state department of securities an audit report containing a balance sheet and income statement which the defendant ". . . knew or in the exercise of reasonable care should have known to be false or misleading." The balance sheet was false and misleading in that it improperly included as admitted assets six "straw man" mortgages. These mortgages were drawn by defendant in his capacity as general counsel for the corporations in-

volved. It was thus sought to divert cash from MAGIC to Allied Development Corporation, in contravention of the state conflict-of-interest statute (sec. 201.24 (4), Stats.). The balance sheet filed with the state improperly included as admitted assets of MAGIC these six "straw man" mortgages. The defendant knew or in the exercise of reasonable care should have known that the audit report was false and misleading.

The referee also found that the defendant wrongly participated in loans made by MAGIC to the trustee of a trust known as "Lumbermen's Trust," the purpose of such loans being to get MAGIC money into other corporations, affiliated with MAGIC, in contravention of the conflict-of-interest statute. The defendant knew or should have known of the illegality of such transactions.

The referee further found that the defendant, then being secretary and a director of MAGIC, conveyed to that corporation his vendor's interest under a land contract in contravention of the conflict-of-interest statute. When the state insurance commission challenged this transaction, the vendor's interest was conveyed back to the defendant, who forthwith transferred title to a "straw man" third party, who forthwith conveyed title back to MAGIC. This series of conveyances constituted a violation of the conflict-of-interest statutes. Additionally, this vendor's interest in a land contract was subsequently shown on MAGIC's financial statement as real estate when it was in fact no more than a vendor's interest under a land contract. The referee found that the defendant knowingly violated the conflict-of-interest statute in this transaction, as indeed he did.

In all three situations, the defendant acted as secretary, a director and general counsel of MAGIC. While it cannot be said from this record that the defendant knew of the misstatements involved in the six "straw man" mortgages, it is clear that he should have known, particularly because he participated in the drawing up of

the mortgages involved. That he was aware or should have been aware of the illegality of the transactions with Lumbermen's Trust is equally apparent. In the subterfuge conveyances involved in the transfer of his own vendor's interest in a land contract to MAGIC (in exchange for $6,000 stock in MAGIC), both his knowledge of the illegality involved and his actual participation in the illegal scheme are undenied and undeniable. This then is the unprofessional conduct involved, and the referee's finding of unprofessional conduct is not in any way disputed by defendant.

Counsel for the defendant asks only that the recommendation of the referee be followed, specifically urging that the period of suspension be six months and hopefully adding the request that the defendant be excused from the payment of costs incurred in this proceeding. Counsel for the Board of State Bar Commissioners urges that a judgment of discipline "more severe" than that recommended by the referee be made by this court. On balance and on the entire record, including the referee's finding as to present ill health of the defendant, it is the judgment of this court that the proper discipline to be imposed in this disciplinary proceeding is one year's suspension of the right to practice law in this state, together with the payment of costs.

Therefore, it is ordered and adjudged that the license to practice law in this state of Clarence G. Bylsma is suspended for a minimum period of one year and until restored by this court upon proper application for reinstatement. Clarence G. Bylsma shall pay the costs of this proceeding up to but not exceeding $5,000 and such costs shall be paid within two years of this date.

WILKIE, J., took no part.